# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Michael Slone Jackson,
    Petitioner


    vs                         Case No. 1:05cv608
                                  (Spiegel, S.J.; Hogan, M.J.)

Michael Sheets,[1]
    Respondent

---

## REPORT AND RECOMMENDATION

---

Petitioner, an inmate currently in state custody at the Ross Correctional Institution in Chillicothe, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on respondent's motion to dismiss (Doc. 4), petitioner's response in opposition to the motion (Doc. 5), respondent's reply to petitioner's response (Doc. 7), and petitioner's supplemental memorandum in response thereto (Doc. 8).

In the motion to dismiss (Doc. 4), respondent contends that the petition is barred from review by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214.  Under 28 U.S.C. § 2244(d)(1), a person in custody pursuant to the judgment of a state court must file an application for writ of habeas corpus within one year from the latest of:  (A) the date on which the judgment became final by the conclusion of direct review or the

---

[1]In the original petition, petitioner properly named as respondent Pat Hurley, who was then Warden of Ross Correctional Institution (RCI), where petitioner is incarcerated.  However, since the time petitioner instituted this action, Pat Hurley was replaced by Michael Sheets as RCI's Warden.  Because Michael Sheets is the individual who currently has custody of petitioner, the caption of this case is hereby changed to reflect the proper party respondent.  *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. Under 28 U.S.C. § 2244(d)(2), the running of the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.

In this action, petitioner is challenging his September 21, 1999 conviction in the Hamilton County, Ohio, Court of Common Pleas upon his entry of guilty pleas to the following three counts contained in a six-count indictment, with attached firearm specifications: aggravated burglary in violation of Ohio Rev. Code § 2911.11(A)(2); felonious assault in violation of Ohio Rev. Code § 2903.11(A)(2); and aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(1). (*See* Doc. 1, p. 2; Doc. 4, Exs. 1-2). On that same date, petitioner was sentenced to terms of imprisonment totaling fifteen (15) years. (Doc. 1, p. 2; Doc. 4, Ex. 3).[2]

Petitioner did not pursue an appeal as of right from his conviction and sentence. Indeed, he took no action to challenge his conviction until nearly three and one-half years later, when on March 3, 2003, he filed a *pro se* motion to withdraw his guilty plea pursuant to Ohio R. Crim. P. 32.1 with the Hamilton County Common Pleas Court. (Doc. 4, Ex. 5). Petitioner sought to withdraw his plea on the ground that his trial counsel was ineffective by failing to "investigate any of the facts" or interview witnesses related to the case; failing to file a motion to suppress certain items obtained illegally from his home; and failing to file a motion to suppress "an incriminating written statement" made by him. (*Id.*).

In an attached affidavit, petitioner claimed as cause for his delay in filing that neither the trial court nor his counsel informed him of his right of appeal, of his right to court-appointed counsel on appeal, or that an appeal "had to filed within certain

---

[2]Specifically, petitioner was sentenced to consecutive terms of imprisonment of four (4) years for each crime, as well as three (3) year prison terms on the attached firearm specifications to be served concurrently with each other but consecutively to the sentences imposed for the three underlying offenses. (*See* Doc. 4, Ex. 3).

2

time limits;" petitioner also averred that until August 28, 2002, when the Ohio Supreme Court issued its decision in *State v. Bush,* 773 N.E.2d 522 (Ohio 2002), he was under the erroneous "impression" that a Rule 32.1 motion to withdraw a guilty plea was restricted by the "same time limits for filing a direct appeal" as of right. (*Id.,* Ex. 6).

In support of his claim that his trial counsel failed to inform him of his appeal rights, petitioner attached to his affidavit a letter dated February 20, 2002 from his trial counsel apparently in response to a letter sent by petitioner dated February 12, 2002. Counsel's letter provided in relevant part:

> With regard to your right to appeal your sentence, you were informed by the Judge that you had a right to appeal the sentence by filing a Notice of Appeal within 30 days of the sentencing hearing. This is stated to all persons convicted of a felony or a misdemeanor. . . .

(*Id.*).

On April 2, 2003, the trial court denied petitioner's motion to withdraw his plea on the ground that it was "not well taken." (*Id.,* Ex. 7). In so ruling, the court reasoned that petitioner's allegations of ineffective assistance by his trial counsel, even if accepted "as true," were insufficient to demonstrate "manifest injustice" as required by Ohio R. Crim. P. 32.1. (*Id.*).

Petitioner timely appealed to the Ohio Court of Appeals, First Appellate District. On December 17, 2003, the court affirmed the trial court's judgment. (*Id.*, Ex. 8). Petitioner sought leave to appeal further to the Ohio Supreme Court. On April 28, 2004, that court denied leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 9).

Over five months later, on October 8, 2004, petitioner next filed a *pro se* motion for leave to file a delayed appeal to the Ohio Court of Appeals, First Appellate District. (*Id.,* Ex. 10). He submitted the same reasons for his delay in filing that he provided to the trial court in his post-conviction motion to withdraw his guilty plea. (*See id.*). On October 28, 2004, the Court of Appeals overruled petitioner's motion for leave to file a delayed appeal on the ground that "appellant has failed to provide sufficient reasons for failure to perfect an appeal as of right." (*Id.,* Ex. 11). Apparently, petitioner appealed further to the Ohio Supreme Court, which entered an

3

order on March 16, 2005 dismissing the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 12).

Nearly six months later, petitioner initiated the instant federal habeas corpus action. The petition, which was not dated by petitioner, was stamped as "received" by the Court on September 16, 2005 and was officially "filed" on September 19, 2005. (Doc. 1).

In the petition, petitioner alleges three grounds for relief:

**Ground One:** The state court[s] erred when they declined petitioner's delayed appeal. Violating his due process [and] equal protection rights.

**Supporting Facts:** Petitioner has been denied his right to appeal because his attorney and the trial court failed to advise him of such right or the right to have appellate counsel appointed to him. Petitioner's transcripts and journal entry are devoid of any such notification by the trial court. Trial counsel also stated, in letters to petitioner, that he didn't make him (petitioner) aware of his right because he thought the trial court did.

**Ground Two:** The state courts erred when [they] didn't find trial counsel ineffective when he failed to investigate the facts or interview any witnesses involved in the case.

**Ground Three:** The state courts violated petitioner's 4th, 5th, 6th and 14th amendment constitutional rights when they failed to find trial counsel ineffective for not filing motions to suppress evidence seized from his home and his confession.

(*Id.*).

In support of his claim alleged in Ground One, petitioner has attached as exhibits to the petition his trial counsel's letter of February 20, 2002 discussed above, *see supra* p. 3, as well as an additional letter from his counsel dated January 28, 2002, containing the following statement in response to a question posed by petitioner in a letter dated January 22, 2002:

With regard to your question number three, you were informed at the time of sentencing that you have 30 days in which to appeal your sentence. Although an appeal is a matter of right, it is not automatic and must be exercised by you. I will not exercise a right of appeal without you telling me that you want to appeal. Furthermore, I do not believe you have an appealable issue, anyway.

(*Id.,* Appendix A).

In this case, the Court must first determine which statute of limitations provision set forth in 28 U.S.C. § 2244(d)(1) applies to each ground for relief alleged in the petition. As an initial matter, it appears that petitioner's claims for relief are based on purported errors that occurred prior to or during the state plea-taking and sentencing proceedings. Normally, such claims are governed by 28 U.S.C. § 2244(d)(1)(A), which provides the statute of limitations begins to run from the date on which the challenged judgment became "final" by the conclusion of direct review or the expiration of time for seeking such review.[3]

However, petitioner also has alleged in Ground One of the petition that he was denied his constitutional right of appeal based on the failure of his trial attorney and the trial court to inform him that he had a right to appeal his guilty plea conviction and sentence with the assistance of court-appointed counsel, as well as of the time limits for perfecting an appeal as of right. The question then arises as to whether these particular claims are governed by a different provision set forth in 28 U.S.C. § 2244(d)(1)(D), which provides that the statute of limitations does not begin to run until the factual predicate of the claims presented could have been discovered in the

---

[3]Petitioner argues in his response to the motion to dismiss that his ineffective assistance of trial counsel claims alleged in Grounds Two and Three are governed by § 2244(d)(1)(D), because he could not discover the facts underlying these claims until September 3, 2002, after diligently pursuing discovery about his case from April 23, 2001 until September 3, 2002. (*See* Doc. 5, pp. 4-5). The Court gives little credence to this contention, which was not raised by petitioner to the state courts as "cause" for his delay in filing his motion to withdraw his guilty plea, where he first presented his ineffective assistance of counsel claims. (*See* Doc. 4, Ex. 6). In any event, the Court rejects petitioner's "due diligence" argument, because even under petitioner's version of events, he took no action to seek discovery regarding his case for a year and one-half after his September 21, 1999 conviction.

exercise of due diligence.[4]

Here, as petitioner has argued, it appears from the transcript of the state trial proceedings that petitioner was not informed by the trial court during the plea-taking and sentencing hearing of his right of appeal with court-appointed counsel or the time limit for perfecting such an appeal as of right.  (*See* Doc. 4, Ex. 13).  However, contrary to petitioner's contention, it does appear from the record that he was made aware before entering the plea agreement with the State that he had a right to an appeal, which he was required to file within a specified time frame.  Specifically, under the terms of the written plea agreement executed by petitioner, as well as defense counsel and the assistant prosecuting attorney, petitioner stated:

> . . . .I understand my right to appeal a maximum sentence, my other limited appellate rights and that any appeal must be filed within 30 days of my sentence.
>
> ****
>
> I have read this form and I knowingly, voluntarily, and intelligently enter this guilty plea.

(*Id.*, Ex. 2; *see also* Ex. 13, Tr. 14-15).

At the plea-taking hearing, before entering his pleas, petitioner stated that he

---

[4]The limitations provision set forth in 28 U.S.C. § 2244(d)(1)(B) has been found to apply in cases where the petitioner has alleged facts indicating his counsel on appeal was ineffective in perfecting or pursuing an appeal and such ineffectiveness actually prevented petitioner from filing a timely habeas petition.  *See, e.g., Waldron v. Jackson,* 348 F.Supp.2d 877, 882-86 (N.D. Ohio 2004); *cf. Winkfield v. Bagley,* 66 Fed.Appx. 578, 582-83 (6th Cir. May 28, 2003) (not published in Federal Reporter), *cert. denied,* 540 U.S. 969 (2003); *Dean v. Pitcher,* No. Civ. 02-71203-DT, 2002 WL 31875460, at *3 (E.D. Mich. Nov. 7, 2002) (unpublished); *Collier v. Dretke,* No. 3:03-CV-2744-L, 2004 WL 1585903, at *2 (N.D. Tex. July 13, 2004) (unpublished Report & Recommendation), *adopted,* 2004 WL 1944030 (N.D. Tex. Aug. 31, 2004); *Felton v. Cockrell,* No. 3:03-CV-0764-L, 2003 WL 21946862, at *3 (N.D. Tex. Aug. 13, 2003) (unpublished Report & Recommendation).  *But cf. Dunker v. Bissonnette,* 154 F.Supp.2d 95, 105 (D. Mass. 2001) (rejecting argument that the petitioner's court-appointed attorney was a "state actor" under § 2244(d)(1)(B)).  No such allegations have been made here.  Therefore, the one-year limitations provision set forth in § 2244(d)(1)(B) is inapplicable to the case-at-hand.

was a high school graduate enrolled in college and affirmed that he "can read" and had "read [the plea agreement over] and had gone "over it" with his attorney. (*Id.,* Ex. 13, Tr. 13-14). In addition, in response to questions posed personally to him by the trial court, petitioner stated that he understood the provisions contained in the agreement and did not have "any questions about it." (*Id.,* Tr. 14).

In light of this evidence demonstrating that before entering his pleas, petitioner was informed of and stated that he understood his right of appeal, as well as the thirty-day time limit for filing such an appeal, the Court concludes that the factual predicate underlying each of petitioner's claims for relief was discoverable in the exercise of due diligence before the conclusion of direct review or the expiration of time for seeking such review. Therefore, it appears that petitioner's claims are governed by by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A).

The Supreme Court's decision in *Johnson v. United States,* 544 U.S. 295 (2005), supports this Court's determination that the statute of limitations set forth in § 2244(d)(1)(A), as opposed to § 2244(d)(1)(D), should govern here. In *Johnson,* the Supreme Court considered the analogous statute of limitations provision governing prisoners collaterally challenging their federal sentences, which is set forth in 28 U.S.C. § 2255, ¶6. In that case, the Court was faced with the question as to when the one-year limitations period begins to run on a claim challenging a federal sentence based on the ground that a state sentence used to enhance that sentence has since been vacated. The Court held that the one-year statute of limitations begins to run under § 2255, ¶6(4), a provision directly analogous to § 2244(d)(1)(D), when the petitioner receives notice of the order vacating the prior state conviction, "provided that he has sought it with due diligence in state court, after entry of judgment in the federal case with the enhanced sentence." *Johnson,* 544 U.S. at 298.

In so ruling, the Court agreed with petitioner's argument that notice of the state order eliminating the predicate required for enhancement of the challenged federal sentence, "which is almost always necessary and always sufficient for relief," is a matter of "fact," the discovery of which triggers the limitations period under § 2255, ¶6(4). *Id.* at 306-07. However, the Court pointed out a "minor" anomaly in petitioner's position to the extent that "[i]t is strange to say that an order vacating a conviction has been 'discovered,' the term used by paragraph four, and stranger still to speak about the date on which it could have been discovered with due diligence, when the fact happens to be the outcome of a proceeding in which the § 2255 petitioner was the moving party." *Id.* at 307.

7

Most importantly, the Court further found that there was a "more serious problem" with petitioner's position that his § 2255 petition "is timely under paragraph four as long as he brings it within a year of learning he succeeded in attacking the prior conviction, no matter how long he may have slumbered before starting the successful proceeding." *Id.* The Court reasoned:

> Of course it may well be that [petitioner] took his time because his basic sentence had years to run before the period of enhancement began. But, letting a petitioner wait for as long as the enhancement makes no difference to his actual imprisonment, while the predicate conviction grows increasingly stale and the federal outcome is subject to question, is certainly at odds with the provision in paragraph four that the one year starts running when the operative fact "could have been discovered through the exercise of due diligence." And by maximizing the time that judgments are open to question, a rule allowing that kind of delay would thwart one of AEDPA's principal purposes, *Duncan v. Walker,* 533 U.S. [167, 179 (2001)], *Woodford v. Garceau,* 538 U.S. 202, 206 . . . (2003), [of promoting "finality" by "reduc[ing] delays in the execution of state and federal criminal convictions and sentences ."]

*Id.* at 307-08.

Although the Court concluded that neither of its concerns was sufficiently serious "to justify rejecting [petitioner's] basic argument that notice of the order vacating the predicate conviction is the event that starts the one year running," it was still left "with the question of how to implement the statutory mandate that a petitioner act with due diligence in discovering the crucial fact of the vacatur order that he himself seeks." *Id.* at 308. The Court stated:

> The answer is that diligence can be shown by prompt action on the part of the petitioner as soon as he is in the position to realize that he has an interest in challenging the prior conviction with its potential to enhance the later sentence. The important thing is to identify a particular time when the course of the later federal prosecution clearly shows that diligence is in order.

*Id.* That point in time, which was chosen as best reflecting "the statutory text and its underlying concerns," was determined to be the date of entry of judgment in the

8

federal criminal case. *Id.* at 309.

Based on this line of reasoning, the Court concluded that the one-year limitations period would have run under § 2255, ¶6(4), from the date the petitioner received notice of the state vacatur order if petitioner had acted diligently in obtaining that order after entry of judgment in the federal criminal case. *Id.* at 310. However, because the petitioner had delayed more than three years after entry of judgment in the federal case before filing his state habeas petition attacking the predicate for enhancement, the Court found that petitioner had not acted diligently in challenging his state conviction. *Id.* at 311. Because petitioner had not exercised due diligence, the Court concluded that the limitations period set forth in § 2255, ¶6(4), was "unavailable" and that the petition was properly dismissed on the ground that it was untimely-filed. *Id.*

This case is analogous to *Johnson* to the extent it may be argued that notice of the Ohio Court of Appeals' decision denying petitioner's motion for delayed appeal forms the basis for the claim for relief alleged in Ground One and is a matter of fact, the discovery of which triggers the applicability of the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1)(D). The case is further analogous to *Johnson* to the extent that the "good cause" argument underlying petitioner's claim for relief is based on alleged errors or mis-perceptions that occurred years earlier, when the time for filing an appeal of right had not yet expired, which petitioner failed to diligently pursue in the state courts.

In this case, petitioner did nothing to challenge his conviction until nearly three and one-half years after the entry of the trial court's judgment on September 21, 1999. Moreover, although he unsuccessfully sought to withdraw his guilty plea in March 2003 claiming in part as "cause" for his delay in filing that he had not been informed of his right of appeal, he did not actually attempt to obtain a delayed appeal from his conviction until October 8, 2004, over five years after entry of the trial judge's judgment of conviction and sentence.

As discussed above, *see supra* pp. 6-7, although petitioner delayed nearly three and one-half years before asserting any claim that he was not adequately informed of his appellate rights, and over five years before seeking a delayed appeal in the Ohio Court of Appeals based on this argument of "cause" for his delay in filing, there is evidence in the record indicating that petitioner was made sufficiently aware of his appellate rights at the time he entered his guilty pleas. To the extent petitioner may

argue the plea agreement was vague and could be misinterpreted as to the issues he could appeal, petitioner has not provided an adequate explanation for his three and one-half year delay in bringing any challenge to his conviction or sentence in the state courts, or his delay of over five years in pursuing a delayed appeal. In any event, it appears that the plea agreement informed petitioner of his appellate rights with respect to his guilty pleas in accordance with Ohio law. *See* Ohio R. Crim. P. 32(B)(2); Ohio Rev. Code § 2953.08(D).[5]

In so ruling, the Court is aware of the Sixth Circuit's recent decision in *DiCenzi v. Rose*, 452 F.3d 465, 469-72 (6th Cir. 2006), *superseding and amending,* 419 F.3d 493, 497-500 (6th Cir. 2005), which was decided after but did not address the Supreme Court's *Johnson* decision. In *DiCenzi,* the Sixth Circuit vacated the district court's dismissal of claims stemming from counsel's and the court's alleged failure at sentencing to inform the petitioner of his appeal rights as time-barred under § 2244(d)(1)(A) and remanded the matter for determination as to whether petitioner had acted with due diligence in discovering his right of appeal, thereby triggering the applicability of the later limitations period set forth in § 2244(d)(1)(D). The Court is also aware that in *Wolfe v. Randle,* Case No. 1:00cv410 (S.D. Ohio) (Spiegel, J.) (Doc. 9, Report & Recommendation issued March 12, 2001 adopted by Order of July 3, 2001), which was decided before *Johnson,* the petitioner's claim alleging a denial of his right to appeal was considered timely under 28 U.S.C. § 2244(d)(1)(D), because the statute of limitations did not begin to run until the Ohio Supreme Court issued its final ruling in the state court proceedings denying petitioner's motion for delayed appeal. However, unlike this case, the record was not developed in *DiCenzi* as to when petitioner was made aware of his appeal rights, and in *Wolfe,* it was determined that petitioner had not been informed of his right to an appeal by either his counsel or

---

[5]*See also State v. Poole,* No. 05AP-1266, 2006 WL 158618, at *2 (Ohio Ct. App. Jan. 19, 2006) (unpublished); *State v. White,* No. 21741, 2003 WL 22451372, at *1 (Ohio Ct. App. Oct. 6, 2003) (unpublished) (holding that Court of Appeals was precluded by Ohio Rev. Code § 2953.08(D) from reviewing the sentence imposed after entry of a guilty plea that was voluntarily made with full understanding of the consequences, which fell within the statutory maximum and was recommended jointly by the defense and prosecution, and that the trial court, therefore, was not required to advise the defendant of any right to appeal his sentence pursuant to Ohio R. Crim. P. 32(B)); *State v. Strickland,* No. 21554, 2003 WL 21448349, at *1 (Ohio Ct. App. May 22, 2003) (unpublished) ("After entering a guilty plea, a defendant has no right to an appeal from the *conviction*; however, a defendant may have a right to appeal the *sentence* pursuant to R.C. 2953.08.") (emphasis in original); *cf. State v. Borchers,* 655 N.E.2d 225, 229 (Ohio Ct. App. 1995).

the trial court, *see Wolfe v. Randle*, 267 F.Supp.2d 743 (S.D. Ohio 2003).

This case is more akin to another action before this District Court–*Goins v. Sanders,* 1:01cv185 (S.D. Ohio July 23, 2004) (Weber, J.) (Doc. 41), which was also decided before *Johnson*.  In *Goins,* the Court refused to reopen a case determined to be time-barred under 28 U.S.C. § 2244(d)(1)(A), because in contrast to *Wolfe,* the petitioner had been "specifically informed of his appeal rights at his plea hearing and in writing prior thereto."  (*Id.,* p. 2).  As in *Goins,* the present record is sufficient to demonstrate that petitioner was informed of and understood his appeal rights before his conviction became "final" under 28 U.S.C. § 2244(d)(1)(A) by the conclusion of direct review or the expiration of time for seeking such review.[6]

Under § 2244(d)(1)(A), petitioner's conviction became "final" on October 21, 1999, when the thirty (30) day period expired for filing an appeal as of right to the Ohio Court of Appeals from the trial court's final Judgment Entry issued September 21, 1999.  *See* Ohio R. App. P. 4(A).  The statute of limitations commenced running the following day on October 22, 1999, *see* Fed. R. Civ. P. 6; *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000), and expired one year later on October 22, 2000 absent the application of the statutory tolling provision set forth in 28 U.S.C. § 2244(d)(2) or any other applicable tolling principles.[7]

---

[6]Even assuming, as it appears from the present record, that petitioner may not have been specifically informed of the right to court-appointed counsel on appeal, he was made aware when he executed the plea agreement that he had a right to an appeal, which he was required to file within thirty days.  The awareness of these facts alone was sufficient to constitute notice to petitioner that he was required to act promptly within the requisite 30-day time frame to exercise his constitutional right of appeal.  To provide the effective assistance guaranteed by the Sixth Amendment in the absence of appointment of new counsel for appeal purposes, petitioner's trial counsel would have had to file a notice of appeal on petitioner's behalf if petitioner had requested him to do so within that 30-day period.  *See, e.g., Roe v. Flores-Ortega,* 528 U.S. 470, 477 (2000) (citing *Rodriquez v. United States,* 395 U.S. 327 (1969)); *Peguero v. United States,* 526 U.S. 23, 28 (1999); *Waldron v. Jackson,* 348 F.Supp.2d 877, 889 (N.D. Ohio 2004) (and cases cited therein).  However, as petitioner's attorney indicated in his letter to petitioner dated January 28, 2002, petitioner never expressed that he wanted to exercise his right of appeal from his conviction or sentence, which would have triggered such a duty.  (*See* Doc. 1, Appendix A).

[7]To the extent petitioner contends that his subsequent motion for delayed appeal caused the limitations period to begin running anew, his argument must fail.  In *Searcy v. Carter,* 246 F.3d 515, 518-19 (6th Cir.), *cert. denied,* 534 U.S. 905 (2001), the Sixth Circuit held that delayed appeal motions do not retrigger the statute's running, but rather can only serve to toll the

During the one-year limitations period, petitioner was entitled to the benefits of the tolling provision set forth in 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. § 2244(d)(2); *Bennett v. Artuz,* 199 F.3d 116, 119 (2nd Cir. 1999), *aff'd,* 531 U.S. 4 (2000); *Gaskins v. Duval,* 183 F.3d 8, 10 (1st Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998) (per curiam); *Gendron v. United States,* 154 F.3d 672, 675 & n.3 (7th Cir. 1998) (per curiam), *cert. denied,* 526 U.S. 1113 (1999); *Hoggro v. Boone,* 150 F.3d 1223, 1226 (10th Cir. 1998); *Lovasz v. Vaughn,* 134 F.3d 146, 148-49 (3rd Cir. 1998); *cf. Morris v. Bell,* 124 F.3d 198 (table), No. 96-5510, 1997 WL 560055, at *3 (6th Cir. Sept. 5, 1997) (unpublished), *cert. denied,* 522 U.S. 1149 (1998). The tolling provision, however, does not "'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully expired." *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998); *see also Smith v. McGinnis,* 208 F.3d 13, 16-17 (2nd Cir.) (and cases cited therein), *cert. denied,* 531 U.S. 840 (2000); *Sorce v. Artuz,* 73 F.Supp.2d 292, 294 (E.D.N.Y. 1999) (and cases cited therein); *Blasi v. Attorney General of Pennsylvania,* 30 F.Supp.2d 481, 485 (M.D. Pa. 1998). Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Rashid,* 991 F. Supp. at 259; *cf. Cox v. Angelone,* 997 F. Supp. 740, 743-44 (E.D. Va. 1998); *Healy v. DiPaolo,* 981 F. Supp. 705, 706-07 (D. Mass. 1997).

In this case, the statute of limitations ran its course long before petitioner took any action to challenge his conviction. As discussed above, *see supra* p. 11, the statute commenced running on October 22, 1999 and expired one year later on October 22, 2000. Therefore, no time remained in the limitations period that could be statutorily tolled under 28 U.S.C. § 2244(d)(2) when petitioner filed his motion to withdraw his guilty plea on March 3, 2003, nearly two and one-half years after the statute of limitations had ceased running.

The statute of limitations may be equitably tolled in limited circumstances. *Dunlap v. United States,* 250 F.3d 1001, 1008 (6th Cir.), *cert. denied*, 534 U.S. 1057 (2001); *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir. 1988). In *Pace v. DiGuglielmo,*

---

limitations period. In *DiCenzi,* the Sixth Circuit further emphasized that a motion for delayed appeal, *"even if granted*, does not restart the statute of limitations, but if properly filed, it does toll the statute during the time the motion was pending." *DiCenzi,* 452 F.3d at 469 (emphasis added).

544 U.S. 408 (2005), the Supreme Court stated that a petitioner seeking equitable tolling generally bears the burden of establishing that (1) he has been pursuing his rights diligently; and (2) "some extraordinary circumstance stood in his way." *Pace,* 544 U.S. at 418 (citing *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990)).

Before *Pace,* the Sixth Circuit required the court to consider the following factors in determining whether the statute of limitations governing federal habeas petitions should be equitably tolled:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) the petitioner's diligence in pursuing his rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Dunlap,* 250 F.3d at 1008 (citing *Andrews,* 851 F.2d at 151). The absence of prejudice to respondent is not an independent basis for invoking the doctrine of equitable tolling. *Dunlap,* 250 F.3d at 1009; *Andrews,* 851 F.2d at 151 (citing *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152 (1984)). The absence of prejudice may only be considered when other factors of the test are met. *Id.*

Here, petitioner has not demonstrated that some extraordinary circumstance prevented him from filing a timely federal habeas petition with this Court. He also has not demonstrated he is entitled to equitable tolling under *Dunlap*. First, petitioner does not argue, nor is there evidence in the record to suggest that he was ignorant, or lacked notice or constructive knowledge, of the one-year filing requirement for federal habeas petitions. Moreover, as discussed above, *see supra* pp. 5-7 & n.3, 9-10, it is clear from the record that petitioner has not been diligent in pursuing his rights. Indeed, even assuming, *arguendo,* that as petitioner has argued, he was unaware of his appeal rights at the time he entered his plea, he certainly knew about them upon receipt of his trial counsel's letters of January and February 2002, which were sent in response to petitioner's letters asking about his appellate rights. Nevertheless, petitioner did nothing in the year thereafter to challenge his conviction, until on March 3, 2003, he filed his motion to withdraw his guilty pleas with the state trial court. Moreover, petitioner did not even attempt to seek a delayed appeal from his conviction until October 8, 2004. Therefore, equitable tolling is inappropriate in this case.

13

Petitioner contends in his supplemental memorandum that because his claims for relief "merit recognition," he is entitled to equitable tolling to prevent a "manifest injustice." (*See* Doc. 8, p. 1). Equitable tolling applies to prevent a "manifest injustice" only in cases where the petitioner presents a credible claim of actual innocence. *Souter v. Jones,* 395 F.3d 577, 601 (6th Cir. 2005). To establish such a claim, petitioner "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" based on "new reliable evidence . . . that was not presented at trial." *Id.* at 590 & n.5 (quoting *Schlup v. Delo,* 513 U.S. 298, 324, 327 (1995)). The actual innocence exception is "rare" and is to be applied only in the "extraordinary case," where the "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine the confidence in the result of the trial." *Id.* (quoting *Schlup,* 513 U.S. at 317, 321). Petitioner has made no such showing in this case.

Accordingly, in sum, the Court concludes that petitioner's claims for relief are governed by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), and that the statute therefore commenced running on October 22, 1999 and expired one year later on October 22, 2000. Neither the statutory tolling provision set forth in 28 U.S.C. § 2244(d)(2) nor equitable tolling principles apply to justify excusing the statute of limitations bar in this case. The instant petition, "received" for filing on September 16, 2005, was submitted nearly five years too late. It is, therefore, RECOMMENDED that respondent's motion to dismiss (Doc. 4) be GRANTED, and petitioner's petition for writ of habeas corpus (Doc. 1) be DISMISSED with prejudice as time-barred.

## IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's motion to dismiss (Doc. 4) be GRANTED, and that petitioner's petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 (Doc. 1) be DISMISSED with prejudice as time-barred.

2. A certificate of appealability should not issue with respect to any Order adopting this Court's Report and Recommendation to dismiss the petition with prejudice on procedural statute of limitations grounds, because under the first prong of the applicable two-part standard established in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is

correct in its procedural ruling.[8]  Petitioner remains free to request issuance of the certificate from the Court of Appeals.  *See* 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore DENY any application by petitioner to proceed on appeal *in forma pauperis*.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).  Petitioner remains free to apply to proceed *in forma pauperis* in the Court of Appeals.

Date:  8/8/2006                          s/Timothy S. Hogan
       cbc                                       Timothy S. Hogan
                                         United States Magistrate Judge

J:\BRYANCC\2006 habeas orders\05-608mtd-sol.gp-applrt.grant.wpd

---

[8]Because this Court finds that the first prong of the two-part *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated viable constitutional claims in the petition.  *See Slack,* 529 U.S. at 484.

15

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Michael Slone Jackson,
     Petitioner,

                                      Case No. 1:05cv608

        v.                          (Spiegel, S.J.; Hogan, M.J.)

Michael Sheets,
     Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.  Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

1:05cv608 Docs. 9+10

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____  ☐ Agent  ☐ Addressee<br>B. Received by ( Printed Name)  C. Date of Delivery |
| 1. Article Addressed to:<br><br>Michael Stone Jackson<br>A 382-400<br>Ross Corr. Inst.<br>PO Box 7010<br>Chillicothe, OH 45601 | D. Is delivery address different from item 1?  ☐ Yes<br>   If YES, enter delivery address below:  ☐ No<br><br>3. Service Type<br>☑ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)*  ☐ Yes |
| 2. Article Number<br>*(Transfer from service label)* | 7002 0860 0006 5230 5035 |

PS Form 3811, August 2001          Domestic Return Receipt          102595-02-M-0835